**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER BLOOM, *et al.*,<br><br>     *Plaintiffs,*<br><br>  v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br><br>     *Defendants.* | Case No. 2:26-cv-1232-JDW |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS**
**DEFENDANT OF THE GUARDIAN CIVIC LEAGUE**

Proposed Intervenor-Defendant, the Guardian Civic League, submits this Memorandum of Law in support of its Motion to Intervene as Defendant pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b)(1).

I.    **INTRODUCTION**

Proposed Intervenor-Defendant is the Guardian Civic League. The Guardian Civic League is entitled to intervene as a defendant as of right under Rule 24(a)(2) because this Motion is timely, because its rights and interests are at stake, and because those rights and interests are not adequately represented by the existing Defendants. In the alternative, the Guardian Civic League should be allowed to intervene as a defendant under Rule 24(b)(1).

The Guardian Civic League works to improve law enforcement in Philadelphia and has over 1,100 members, most of whom are active or retired police officers. It has a strong and unique interest in fair promotion policies and practices within the Philadelphia Police Department.

1

II.     BACKGROUND

1.      **Philadelphia's Rule of Two and Amendment to the Home Rule Charter to Replace It with the Varying Rule**

For decades, the City of Philadelphia made promotion decisions under the "Rule of Two," which limited hiring managers to choosing between only the two top-scoring candidates for each civil-service vacancy. Under the Rule of Two, each applicant for a vacancy received a precise numerical rating based chiefly on exam scores, and hiring managers had very little discretion in choosing candidates to fill a vacancy.[1] As of 2018, the other 29 of the nation's 30 largest cities gave hiring managers more options and discretion in choosing candidates.[2] "[B]y drawing hard-and-fast distinctions between candidates of roughly equal qualifications," the Rule of Two could "undermine a manager's ability to hire a diverse and talented workforce."[3] It also contributed to lengthy wait times for hiring decisions, which made it difficult for the City to land the most talented candidates.[4] For example, "[f]rom 2013 through 2015, the median period between a job candidate's submission of an application and the day he or she was selected for a position in the same classification was 360 days," with candidates sitting on eligibility lists for up to two years.[5]

Since as early as 2015, Philadelphia City Council considered options for allowing hiring managers to consider more factors in choosing the appropriate candidate.[6] In a 2015 call for hearings, then-Councilmember Blondell Reynolds Brown declared:

---

[1] *See* Pew Charitable Trs., *Hiring and Employment in Philadelphia City Government* 2 (June 26, 2018), https://www.pew.org/en/research-and-analysis/reports/2018/06/26/hiring-and-employment-in-philadelphia-city-government.
[2] *Id.*
[3] *Id.* at 15.
[4] *Id.* at 16.
[5] *Id.*
[6] City Council Phila., *Councilmembers Call for Hearings on City's "Rule of Two"* (Sept. 17, 2015), https://phlcouncil.com/councilmembers-call-for-hearings-on-citys-rule-of-two/.

> No major company would interview only two people for a job based on how they scored on a test. That is an old way of thinking. In 2015, companies are hiring for specific, unique skills, especially those involving technology, language and a host of other critical thinking skills and abilities that just don't shine through on the Civil Service exam. We need to give our City departments more qualified candidate options to consider in the hiring pool.[7]

Roughly six years later, then-Councilmember Cherelle L. Parker introduced a resolution proposing an amendment to Philadelphia's Home Rule Charter that would repeal the Rule of Two and replace it with a "Varying Rule" by which each hiring manager would have the discretion to determine the number of people on an eligibility list from which a hiring or promotion decision could be made, as well as to determine the number of times a person may be passed over and remain eligible on such a list.[8]

On June 17, 2021, Philadelphia City Council voted unanimously to put forth a ballot question asking the electorate the following:

> Shall The Philadelphia Home Rule Charter be amended to revise provisions related to the civil service system, to allow the Personnel Director to determine the number of people on an eligible list from which a hiring or promotion decision may be made, and to determine the number of times a person may be passed over and remain eligible on such a list, all based on the position and the needs of the civil service program?[9]

In the November 2021 election, a majority of Philadelphia's electors voted yes for the ballot question and adopted the amendment to the Home Rule Charter. Since then, the City has employed this Varying Rule, which allows hiring managers more discretion in determining how many eligible candidates may be considered for a vacancy,[10] and which empowers them to make promotion

---

[7] *Id.*

[8] Resolution No. 210514.

[9] Bill No. 210501.

[10] The Varying Rule is sometimes referred to as the "Rule of Five," but the Home Rule Charter nowhere specifies that the number of candidates must be five.

decisions based on merit factors apart from test scores, such as job performance, professional experience, and leadership and supervisory capability.

Plaintiffs allege that the Philadelphia Police Department illegally applied the Varying Rule to deny them promotions because of their race and sex. *See* Compl. at 1.

### 2.     Plaintiffs' Allegations

Plaintiffs are five police officers who were denied promotions in November 2025. *Id.* Plaintiffs allege that the Varying Rule "was instituted for the express purpose of increasing the representation of minority and female candidates in supervisory positions within the City of Philadelphia at the expense of white men." *Id.* Each Plaintiff alleges he was passed over for promotion in favor of a candidate with lower civil service exam scores because those other candidates were Black and/or female. *Id.* ¶¶ 55, 59.

Plaintiffs allege that, in applying the varying rule and denying them promotions, the City violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981; the Pennsylvania Human Relations Act, 43 Pa.C.S. § 955(a); the Pennsylvania Constitution, Pa. Const. art. I, §§ 26, 28, 29; and the Equal Protection Clause of the Unites States Constitution, U.S. Const. amend. XIV, § 1. *Id.* at 29-34. Plaintiffs bring this action on behalf of themselves and also seek class-wide relief. *Id.* §§ 147, 207-12.

### 3.     The Guardian Civic League

The Guardian Civic League is an organization with over 1,100 members. Most of its members are active or retired law enforcement officers from the Philadelphia Police Department and other local law enforcement agencies. The majority of its members are African American, and the Guardian Civic League is proud to have members of all racial backgrounds.

For seventy years, the Guardian Civic League has spoken out on many important matters that affect the lives of all Philadelphians, such as unfair treatment toward minority citizens by

police, the lack of services in minority communities, unfair treatment toward minority police officers, and the low rates of hiring and promotion of minority officers. The Guardian Civic League has long worked to reduce racial disparities in promotions within the Philadelphia Police Department, including by offering study groups to help officers prepare for their promotion exams, and by offering mentorship and networking opportunities for more junior officers to foster upward mobility for its members.

### III.    ARGUMENT

#### 1.    The Guardian Civic League is Entitled to Intervene as a Matter of Right

In the Third Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a)(2) upon establishing that:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (citation modified). Courts construe these factors consistent with a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998) (citation modified).

The Guardian Civic League satisfies all four of these factors. Therefore, this Court should permit it to intervene as a defendant as a matter of right. *See Constand v. Castor*, No. 15-cv-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) (noting that "Rule 24(a) contains mandatory language—the court 'must permit' intervention, so long as certain conditions are satisfied").

#### A.    *The Motion to Intervene is Timely*

Timeliness of a motion to intervene is determined based on consideration of "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the

delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (citation modified). Ultimately, "the timeliness of a motion to intervene is determined from all the circumstances" and in the court's "sound discretion." *Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*, 297 F. App'x 138, 140 (3d Cir. 2008) (citation modified).

Proposed Intervenor-Defendant's Motion is timely. Plaintiffs instituted this action on February 25, 2026. Defendants filed an answer on April 27, 2026. This Motion to Intervene is filed before the Pretrial Conference pursuant to Fed. R. Civ. P. 16 scheduled for May 21, 2026. "[T]he critical inquiry [for timeliness] is: what proceedings of substance on the merits have occurred?" *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

Here, the answer is essentially none. The case is at a very early stage, and no apparent prejudice will result to the parties if the Guardian Civic League is allowed to intervene. *See Evanston Ins. Co. v. Tristar Prods. Inc.*, No. 5:20-CV-1934, 2020 WL 4671443, at *3 (E.D. Pa. Aug. 12, 2020) (motion to intervene was timely where the "action [was] still in its infancy; the parties only recently engaged in their Rule 16 conference with the Court"). Finally, there was no unreasonable delay in filing this Motion to Intervene, as the Guardian Civic League only recently learned of the lawsuit and considered its interest in the outcome. *See id.* (no unreasonable delay where intervenor only "recently learned of [the] action" and took "some time to consider the nature of its potential interest in [the] lawsuit after becoming aware of its existence").

### B.      The Guardian Civic League has a Substantial Interest in the Litigation

The Guardian Civic League has a "sufficient," "significantly protectable" interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Under Rule 24(a)(2), a protectable interest is any "cognizable legal interest" that is more than a mere "interest of a general

and indefinite character." *Pennsylvania v. President U.S.*, 888 F.3d 52, 58 (3d Cir. 2018).[11] The Guardian Civic League has a particularized interest in ensuring fair, nondiscriminatory promotional policies and practices exist within the Philadelphia Police Department. Courts routinely grant potentially impacted beneficiaries, and those who represent them, leave to intervene. *See, e.g.*, *id.* at 58 (permitting intervention by religious nonprofit organization that stood to benefit from challenged regulatory protection).

Here, the Guardian Civic League has a direct, particularized interest in the outcome of this case. The Guardian Civic League has more than 1,100 members, most of whom are current and retired African-American police officers in Philadelphia. The organization's core activities include working with its members to prepare and encourage them to pursue professional advancement within the Philadelphia Police Department. In the experience of the Guardian Civic League, the Varying Rule, by modernizing Philadelphia's hiring policies and practices to align them with those long used in peer cities, better ensures that promotion decisions are based on applicants' overall merit instead of mere test scores, and it has resulted in less severely disproportionate representation of Black officers in the upper ranks of the Philadelphia Police Department. The Guardian Civic League has an interest in the continuation and improvement of these hiring policies and practices.

> **C.      *Disposition of this Case is Likely to Affect or Impair the Interests of the Guardian Civic League***

An applicant for intervention as of right also "must demonstrate that [its] legal interests may be affected or impaired[] as a practical matter by the disposition of the action." *Id*. at 59 (quoting *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992)) (alterations in

---

[11] The Guardian Civic League need not separately establish Article III standing because it seeks to intervene as a defendant, and because it and Defendants seek the same ultimate outcome—dismissal or denial of the claims brought by Plaintiffs. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439-40 (2017); *Pennsylvania v. President U.S.*, 888 F.3d at 57 n.2.

original). "[I]t is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." *Id.* (quoting *Brody*, 957 F.2d at 1123). The inquiry focuses on the practical effects of the litigation, and the court "may consider any significant legal effect on the applicant's interest, including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention." *Id.* (quoting *Brody*, 957 F.2d at 1122-23).

Plaintiffs seek relief including a declaration "that the defendants' promotional policies and practices, including the [Varying Rule] as applied, violate" federal and state laws. Compl. ¶ 213. Such an outcome would likely lead the Philadelphia Police Department to revert its hiring practices in ways that would unfairly disadvantage Black applicants, including many members of the Guardian Civic League, by deprioritizing measures of merit apart from raw test scores. This would impair the Guardian Civic League's core interest in fostering upward mobility for its members.

### D.   Defendants Do Not Adequately Represent the Interests of the Guardian Civic League

Finally, the Guardian Civic League meets its "minimal" burden of demonstrating that the existing parties *may* not adequately represent its interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982). "The possibility that the interests of the applicant and the parties may diverge need not be great," *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (internal quotation marks and citation omitted), and a proposed intervenor need show only that "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of V.I.*, 748 F.3d 514, 519-20 (3d Cir. 2014).

Plaintiffs seek two types of relief: (1) declaratory and injunctive relief that would effect significant policy changes across the Philadelphia Police Department and indeed all City hiring, and (2) class-wide monetary relief including back pay, front pay, compensatory damages, punitive

8

damages, and pre- and post-judgment interest. Compl. ¶ 213. The Guardian Civic League seeks to defend solely against the first type of relief; by contrast, the City must defend against both types of relief, including monetary damages that could be very significant for a municipality with consistent budgetary constraints. The City may thus be incentivized to pursue a global settlement that would prioritize keeping monetary relief to a minimum, at the expense of the declaratory and injunctive issues of paramount importance to the Guardian Civic League. *See, e.g.*, *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *see also Kleissler*, 157 F.3d at 972 ("[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light."); *Am. Farm Bureau Fed'n,* 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders).

### 2.    In the Alternative, the Court Should Grant Permissive Intervention

Even if the Court determines that the Guardian Civic League is not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. A court may grant permissive intervention when the motion to intervene is "timely," the proposed intervenor has "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The decision whether to grant permissive intervention is "highly discretionary." *Brody*, 957 F.2d at 1115. Permissive intervention is appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or

legal issues in dispute. *See, e.g.*, *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 ("In deciding whether to permit intervention under Rule 24(b), courts consider whether the proposed intervenors will add anything to the litigation.") (internal quotation marks and citation omitted).

The Guardian Civic League seeks to assert defenses against Plaintiffs' claims. It satisfies the common questions element of Rule 24(b)(1)(B) because its central arguments arise out of the same legal and factual questions as those of the existing parties. It will also make substantial "contributions to the proceedings." *Hoots*, 672 F.2d at 1136. For example, the Guardian Civic League will be able to present unique evidence and legal arguments showing that the adoption and implementation of the Varying Rule does not constitute illegal intentional discrimination.

Finally, granting intervention at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights under Fed. R. Civ. P. 24(b)(3). However, denying intervention would deprive the Guardian Civic League of the chance to defend its cognizable, significant, and protectable interests in this litigation.

## IV.    CONCLUSION

For the reasons set forth above, the Court should grant the Guardian Civic League's Motion to Intervene as Defendant as of right, or in the alternative, via permissive intervention.

Date: May 20, 2026

Respectfully submitted,
*/s/ Benjamin D. Geffen*
Brent W. Landau (PA No. 202189)
Benjamin Geffen (PA No. 310134)
Olivia Mania (PA No. 336161)
PUBLIC INTEREST LAW CENTER
1617 John F. Kennedy Blvd., Suite 1650
Philadelphia, PA 19103
267-546-1308
blandau@pubintlaw.org
bgeffen@pubintlaw.org
omania@pubintlaw.org

*Counsel for Proposed Intervenor-Defendant*

10